Hill,
dissenting: I can not agree with the finding and conclusion of the majority of the Board that petitioner sold the stock of United Filters, Inc. (the Nevada corporation) in Canada and that the profits thereon are nontaxable by the Government of the United States. I believe that the facts show that the sale was made in the United States and that a tax liability was incurred.
The whole purpose of the complicated scheme employed by the officers and stockholders of the Delaware corporation (the United Filters Corporation) to effect a sale of the assets and business of that corporation or of its capital stock to the Oliver Continuous Filter *927 Co. (the California corporation) or to its stockholders was concededly to avoid the payment of taxes in the United States by the Delaware corporation or its stockholders on the profits of such sale.
The terms of the sale and the purchase price to be paid were in all essential respects agreed upon directly between the Delaware corporation and the California corporation before any plan was initiated by the seller to effectuate a tax-free transaction. Had the sale been consummated, as it was initiated, directly from the Delaware corporation to the California corporation, the Delaware corporation or its stockholders would have incurred large tax liabilities. The California corporation would not have incurred any tax liability through such purchase and its accession to the arrangement proposed by the seller was solely in the interest and for the accommodation of the latter. The officers and stockholders of the Delaware corporation organized the Nevada corporation and the petitioner. The Bank of Montreal and the Royal Trust Co. of Canada were selected by the petitioner as agencies to carry out its plan to give to the sale of the Nevada corporation stock the appearance of having been consummated in Canada. These institutions acted under the direction of petitioner and were its agents in effectuating this purpose.
The petitioner first designated the Bank of Montreal at Montreal to be the channel through which to transfer the Nevada corporation stock to the California purchaser and then, because of certain provincial taxes, changed the designation to the Bank of Montreal at Ottawa. It is apparent from the record that it was never the intention of the petitioner or the Bank of Montreal that the latter should be other than the channel through which petitioner should transfer 'title to the stock in question to the purchaser in California. The stock was registered in the name of two nominees of the Bank of Montreal as custodians thereof for petitioner. The stock was never registered in the name of the Bank of Montreal or its nominees as owner. The petitioner told the bankers of San Francisco, representing the California purchaser, to deal through the Royal Trust Co. of Montreal, Canada, in purchasing the stock. The Royal Trust Co. was an agency of the petitioner, not of the purchaser, and was part of the channel provided by petitioner through which to convey the stock to the California purchaser. There is nothing in the record to indicate that the Royal Trust Co. received any compensation from the purchaser for its services in connection with the transaction. The bankers of San Francisco did not select the Royal Trust Co. to act for them. They dealt with petitioner through it because petitioner told them to do so. Immediately upon receipt of the Nevada corporation stock from the Bank of Montreal, the Royal Trust Co. canceled it by authority of the Nevada corporation and advised the vice president of that corporation in San Francisco *928 thereof by telegraph. Thereupon the vice president reissued the stock and delivered it to the bankers of San Francisco. When the Royal Trust Co. canceled the certificates received from petitioner through the nominees of the Bank of Montreal, petitioner’s custodian thereof, it acted as agent of the Nevada corporation, which was under the complete domination of petitioner. The Royal Trust Co. was the agent of petitioner, and its possession of the certificates of stock was the possession of petitioner and not of the bankers of San Francisco or of the California corporation.
The deal for the sale of the stock was not consummated and title thereto did not pass from petitioner until the reissued certificates of stock were delivered “in acceptable form” to the bankers of San Francisco. The petitioner agreed that the purchase money for the stock should not be released to it until the reissued stock certificates were so delivered and, in fact, the purchase money was not so released until the delivery of the stock was made (in acceptable form) in San Francisco, California. Not until the stock was so delivered and the purchase money released to petitioner was the sale consummated, for it could not be determined whether the stock was “in acceptable form” until the certificates were presented to the bankers of San Francisco. This was done in San Francisco. The Nevada corporation, through its vice president, delivered the stock in California and it was there that title thereto passed from petitioner to the purchaser.
The money that was paid to the petitioner for the stock was the money transmitted to Canada by the bankers of San Francisco for that purpose. This money remained the property of the bankers until it was released to the petitioner. The Royal Trust Co. never had title to that money. It was not for its protection, but for the protection of the bankers of San Francisco, that the money was not released to the petitioner until the reissued stock was delivered. The Royal Trust Co. was not recognized by petitioner as having any interest in the release of the money or the delivery of the stock. It is obvious from the record that neither the petitioner, the Bank of Montreal, the Royal Trust Co., nor the bankers of San Francisco intended that the Bank of Montreal or the Royal Trust Co. should become the owner of the stock, but that the sole purpose of all the parties connected with the transaction was to transfer title to the stock from petitioner to the bankers of San Francisco and that the Bank of Montreal and the Royal Trust Co. were brought into the deal only to give to the transaction the appearance of a sale by petitioner in Canada to avoid a tax liability in the United States. There was no substance in that arrangement.
The petitioner had placed in escrow with the Bank of Montreal of San Francisco 1,771 shares of class A stock and 117,777 shares of *929 class B stock of the Nevada corporation, to be issued and delivered to the Oliver Continuous Filter Co. as soon as the bankers had paid for and secured title to the shares of stock being purchased from petitioner. The California corporation also placed with the Bank of Montreal (San Francisco) a bill of sale and deeds to all its properties to be delivered to the Nevada corporation as soon as the bankers had acquired the shares of the Nevada corporation from the petitioner.
Delivery was not made under this escrow agreement until after the reissued stock had been delivered to the bankers of San Francisco and the money therefor released to petitioner. Thus both the petitioner itself and the purchaser of the stock construed the deal for the stock as having been closed only when the reissued stock was delivered in San Francisco and the purchase money therefor released to petitioner.
I respectfully submit that the finding and conclusion should be that petitioner sold the stock in the United States and incurred a tax liability by reason of a gain realized thereon, represented by the difference between $1,966,000, the sale price, and $747,944.52, the statutory cost basis of the stock.
Mellott and Arnold agree with this dissent.